### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STOCKHAM INTERESTS, LLC, et al.,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **BOROUGH OF MORRISVILLE, et al.,** | : | **No. 08-3431** |
| **Defendants.** | : | |

### <u>MEMORANDUM & ORDER</u>

**Schiller, J.**                                                          **November 12, 2008**


      Plaintiff, Stockham Interests, LLC ("Stockham"), owns a piece of property in the Borough of Morrisville.  Plaintiff, 10 Enterprises, LLC ("10 Enterprises"), wishes to open an adult entertainment establishment on the premises and has signed a lease with Stockham that would allow it to operate such a business.  The Borough of Morrisville Zoning Hearing Board ("ZHB") refused to issue the required variances prompting Plaintiffs to bring a number of federal constitutional claims and state law claims against the Borough and the ZHB.  Presently before the Court is Defendants' motion to dismiss and strike portions of the Complaint.  For the reasons that follow, the motion is granted in part and denied in part.


## I.      BACKGROUND

### A.      The Property and Variance Request

      Stockham owns property at 10 South Pennsylvania Avenue in Morrisville, Pennsylvania. (Compl. ¶ 35.)  The property is a four-story building in the C-1 Commercial Zoning District. (Defs.' Mot. to Dismiss Ex. 1 [ZHB Decision] ¶¶ 8-9.)  Stockham envisioned retail and commercial

businesses on the ground floor and a fitness center on the third and fourth floors.  (Compl. ¶ 36.)

Stockham wanted an upscale adult cabaret on the second floor.  (*Id*.)  To that end, Stockham entered

into a lease with 10 Enterprises that would permit 10 Enterprises to occupy the first and second

floors. (Compl. Ex. A [Lease] at 3.)  The lease, dated February 8, 2008, requires Stockham to obtain

all zoning and land use approvals from the Borough; the failure to secure the necessary permits

within one year allows either party to cancel the lease.  (Lease at 18-19.)  The lease is also

contingent "upon the issuance of a use variance, or some other instrument allowing the Tenant to

legally operate their intended business which includes 'adult entertainment' as defined under the

Borough of Morrisville's ordinance." (*Id*. at 33.)  If permission is not obtained within six months

of the signing of the lease or the parties exhausted their reasonable efforts to obtain permission, the

lease releases the parties from their obligations.  (*Id*.)

On March 6, 2008, Stockham applied to the Borough for a use variance from Section 465 of

the Zoning Ordinance to operate an establishment offering non-obscene adult entertainment.  (*See*

Compl. at 28-29 & Compl. Ex. A-1 [Variance Application].)  In the alternative, Stockham sought

a variance that would allow it to display a larger sign than the maximum aggregate permitted in the

C-1 Commercial Zoning District.  (Defs.' Br. in Supp. of Mot. to Dismiss [Defs.' Br.] at 5.)

Stockham also requested a variance that would permit a 1,000 foot, off-premise "wallscape sign"

on the side of the building.  (*See* Compl. at 29; Defs.' Br. at 5.)

On April 7 and May 5, 2008, the ZHB conducted a hearing on the variance requests.  (Defs.'

Br. at 3.)  On May 5, 2008, the ZHB denied the variance requests, entering a written decision on June

19, 2008.  In denying the variance requests, the ZHB determined that the zoning provisions did not

inflict unnecessary hardship upon Stockham.  It determined that Stockham failed to meet its burden

2

of showing that: (1) unique circumstances or conditions existed with respect to the property and the unnecessary hardship was due to those conditions and not due to conditions generally created by the zoning provisions ; (2) due to those circumstances or conditions, the property could not be developed consistent with the Zoning Ordinance and the variance was therefore necessary to enable the reasonable use of the property; (3) the unnecessary hardship was not created by the applicant; (4) granting the variance would not adversely affect the health, safety and welfare of the community; and (5) the variance was the minimum relief necessary to grant Stockham relief from the Zoning Ordinance.  (ZHB Decision at 9.)

Plaintiffs filed their Complaint on July 22, 2008, and raise issues regarding "the constitutionality of actions undertaken by the Legislative and Executive representatives of the Borough of Morrisville . . . and by the Borough of Morrisville Zoning Hearing Board."  (Compl. ¶ 1.)  Plaintiffs assert a litany of challenges to the adult use and signage legislation and the ZHB actions, including: First Amendment challenges; an equal protection challenge; substantive and procedural due process challenges; a contract clause challenge; and challenges pursuant to Pennsylvania's constitution.  Plaintiffs also petitioned this Court for an "on the record review" of the ZHB's decision.  (Compl. at 26-51.)

### B.    The Ordinances

#### 1.    *Adult Use*

"Adult entertainment" is defined under Morrisville's zoning code as "[a] live performance, display or dance of any type, which has any portion of the performance, any actual or simulated performance of specified sexual activities or exhibition and viewing of specified anatomical areas; removal of articles of clothing to appear unclothed or appearing unclothed; pantomiming, modeling

or any other personal services offered customers of a specified sexual activity." (Defs.' Mot. to Dismiss Ex. 4 [Borough Code § 465-6].) "Specified sexual activities," subject to certain exceptions not applicable here, include "human genitals in a state of sexual stimulation or arousal; acts of human masturbation, sexual intercourse or sodomy; and fondling or erotic touching of human genitals, pubic region, buttocks or female breasts." (*Id*.) The "specified anatomical areas" when "less than completely and opaquely covered" include the "human genitals or pubic region; buttocks; and female breasts below a point immediately above the top of the areola." (*Id*.) Also included in the definition are the "human male genitals in a discernible turgid state, even if completely opaquely covered." (*Id*.) An "adult entertainment establishment" includes "[a]ny premises to which the public, patrons or members are invited or admitted and which are so physically arranged as to provide booths, cubicles, rooms, studios, compartments or stalls separate from the common areas of the premises for the purposes of viewing adult-oriented entertainment to a member of the public, a patron or a member." (*Id*. § 465-6(A)(4).)

Adult-oriented establishments must be located 500 feet or further from schools; residential use areas; religious, institutional, or educational use areas; recreational use areas; and athletic or cultural use areas. (Defs.' Mot. to Dismiss Ex. 2 [Borough Code § 465-17] at ¶ 465-17(G)(10)(a).) Additionally, no such establishments may be within 2,000 feet from another adult-oriented establishment. (*Id*. § 465-17(G)(10)(c).) The Borough Code also contains minimum setbacks and signage regulations for adult entertainment establishments. (*Id*. § 465-17(G)(10)(e) & (f).) Such adult-oriented establishments are permitted in Industrial Zoning Districts.

The Borough's Adult Entertainment Ordinance contains "adult entertainment" and "adult-oriented establishment" definitions and minimum distance requirements that are identical to those

4

found in the Zoning Ordinance.  (Defs.' Mot. to Dismiss Ex. 6 [Adult Entertainment Ordinance] §

106-1 & 2.)  The Adult Entertainment Ordinance incorporates portions of the Zoning Ordinance and

further makes it unlawful "to establish or maintain any adult bookstores, adult motion-picture

theaters and adult-oriented establishments within 500 feet of any school, church or any area zoned

for residential use in the Borough."  (Adult Entertainment Ordinance §106-1 & 3.)  The Adult

Entertainment Ordinance also provides that those who violate the adult-use provisions of the code

are subject to fine and imprisonment.  (*Id.* § 106-4.)

>    2.    *Signage*

Stockham also sought variances from the Borough's ordinances related to the size and

placement of signs.  The relevant provisions of the Borough's Sign Ordinance require that "[t]he

aggregate area of all signs attached and painted on a building shall not exceed 40 square feet for each

store within a building" and that "[n]o sign placed perpendicular to the face or a building shall

exceed four square feet in area.  Such signs shall not obstruct pedestrian ways and shall not be placed

within two feet of the curb line."  (Defs.' Mot. to Dismiss Ex. 3 [Sign Ordinance] §§ 465-

51(A)(2)(b); 465-54(D).)

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as

true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.

*See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.,*

*Inc.*, 237 F.3d 270, 272 (3d Cir. 2001).  A court reviewing a motion to dismiss should accept the

complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and

determine whether a reasonable reading indicates that relief may be warranted.  *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2007).  Simply reciting the elements will not suffice.  *Id.* at 231.

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss, if the plaintiff's claims are based on the document.  *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, the Court has considered the following: Plaintiffs' Complaint, Defendants' motion to dismiss and exhibits, Plaintiffs' response, the Lease and Variance Application, and the ZHB decision (but only to the extent it was consistent with the factual allegations of the Complaint).

## III.  DISCUSSION

### A.  Ripeness

Federal courts may only decide matters that present an actual case and controversy.  *See Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003).  The ripeness doctrine helps determine

whether a party has brought an action prematurely and prevents courts from becoming enmeshed in conceptual battles that present insufficiently concrete disputes for adjudication. *Id.*; *see also Le Cabaret 481, Inc. v. Municipality of Kingston*, Civ. A. No. 03-1230, 2005 WL 114171, at *3 (M.D. Pa. Jan. 19, 2005) (quoting *Taylor Inv., Ltd. v. Upper Darby*, 983 F.2d 1285, 1290 (3d Cir. 1993)). In the Third Circuit, " a property owner does not have a ripe claim until the zoning authorities have had 'an opportunity to arrive[ ] at a final, definitive position regarding how [they] will apply the regulation at issue to the particular land in question.'" *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 574 (3d Cir. 2003) (quoting *Taylor Inv.*, 983 F.3d at 1291).

Defendants argue that Plaintiffs' claims are not ripe because they failed to apply for a permit in an area zoned for adult use and because the ZHB never issued a final decision regarding the constitutionality of its ordinances. To support their argument, Defendants rely on *Taylor Investment, Ltd. v. Upper Darby Township*, 983 F.2d 1285 (3d Cir. 1993). In *Taylor Investment*, the township revoked plaintiffs' land use permits after it determined that the owner of a "Billiard Sports Club" on the premises provided false and misleading information to obtain the permits. Rather than reapply for a use permit, appeal the revocation to the township zoning board, or seek a variance, the plaintiffs brought a civil rights lawsuit in district court. *Id.* at 1289. The Third Circuit held that the plaintiffs' claims were not ripe because the finality rule demanded that "local land-planning authorities [have] the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property." *Id.* at 1290. Under Pennsylvania law, the zoning hearing board had the power to interpret the ordinance and determine whether to grant a variance. *Id.* at 1292 (citing 53 PA. CONS. STAT. ANN. §10909.1 (2008)). Thus, a claim ripened upon a decision from the zoning hearing board. *Id.* ("Only the zoning hearing board could definitively and finally revoke use

permits under the Township's ordinance . . . the zoning hearing board must make that determination before plaintiffs' substantive due process claim is ripe.").

But *Taylor Investment* did not reach a number of issues present here. Although the Third Circuit has held that the finality rule applies in the context of as-applied substantive due process and equal protection claims, Plaintiffs go further and contend that the ordinances are facially invalid. The finality rule does not apply to facial attacks on a zoning ordinance. *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006). A facial substantive due process attack on a zoning ordinance alleged to be arbitrary, capricious and unreasonable is ripe even if the plaintiff did not seek a variance. *Id*. at 166.

Furthermore, Plaintiffs have complied with the decision in *Taylor Investment*. Plaintiffs received a final decision regarding their request for a variance from the zoning hearing board, which has the final say under Pennsylvania law. *See* 53 PA. CONS. STAT. ANN. §10909.1 (setting forth jurisdiction of zoning hearing boards to "render final adjudications") & § 10910.2 (stating that zoning hearing boards shall hear requests for variances). Although Pennsylvania law permits a party denied a variance to appeal to the Court of Common Pleas, such an appeal is not a prerequisite for a federal constitutional challenge. *See Taylor Invest.*, 983 F.2d at 1293 n.12 ("A claim is 'final,' however, after the zoning hearing board has rendered a decision. Finality does not require state court review of the board's decision."); *see also R & J Holding Co. v. Redevelopment Auth. of County of Montgomery*, 165 Fed. Appx. 175, 180 (3d Cir. 2006).

Additionally, Plaintiffs have raised facial and as-applied First Amendment challenges to the Borough's ordinances. "A First Amendment claim, particularly a facial challenge is subject to a relaxed ripeness standard." *Peachlum*, 333 F.3d at 434, 438. Courts have recognized that

ordinances that violate the First Amendment tend to chill speech and thus present a particular threat demanding judicial intervention.  *Id*. at 435.  Accordingly, the Third Circuit has never subjected an "as applied" free speech claim to the finality rule.  Likewise, a facial challenge "is not normally subject to administrative finality analysis under any circumstances."  *Id*. at 436-37.  Furthermore, because Plaintiffs' non-First Amendment constitutional claims are intertwined with their free speech claims, judicial economy concerns dictate that they all be handled together in one proceeding.  *See id*. at 440 n.11 (directing district court to address all constitutional claims simultaneously).

### B.   Substantive Claims

#### 1.   First Amendment

First Amendment claims comprise the core of Plaintiff's Complaint.  Plaintiffs assert that the Borough of Morrisville and the ZHB, through their zoning and regulatory ordinances, have restricted Plaintiffs' abilities to engage in protected speech.  Plaintiffs' Complaint raises a number of free speech issues that survive the instant motion to dismiss; the Court will address the merits of these particular claims at a later date.

The Court notes, however, one factual issue that the parties should lay bare early in the proceedings – whether Plaintiffs' proposed establishment will include nude dancing.  Defendants claim that Plaintiffs wish to operate an establishment that will permit nude dancing.  (Defs.' Br. at 30.)  Plaintiffs, on the other hand, assert that they have never told the ZHB that their establishment would offer nude dancing.  (Pls.' Resp. to Defs.' Mot. to Dismiss [Pls.' Resp.] at 18.)

This confusion is understandable as Plaintiffs have waltzed around this issue.  Plaintiffs' Complaint states only that they intend to operate an "adult cabaret for the specific purpose of being a facility that offers 'adult entertainment'" and that the business will offer "expressive dance

9

performances performed by professional artists," which "create[] an improved self image for the dancer and joy and entertainment for the beholder." (Compl. ¶¶ 25, 28-29.)  This opaque language clouds the facts underlying Plaintiffs' First Amendment challenges.  The lease is not much more helpful; it merely states that the tenant may use the property to operate a restaurant and club/lounge with entertainment.  (Lease at 8.)

The expression at issue here is not irrelevant; if Plaintiffs sought to operate a ballet studio, this would not be a federal case.  Nonetheless, Plaintiffs First Amendment claims may proceed.[1]

### 2.  *Procedural Due Process*

To succeed on their procedural due process claims, Plaintiffs must show that they were deprived of a protected property interest and that Pennsylvania's procedures for challenging that deprivation failed to comply with due process of law.[2]  *See Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 258 (E.D. Pa. 2007).  Plaintiffs' procedural due process claims are based on the "Byzantine myriad of regulations with which a proposed Adult Use must comply" and the "'caucus' of the members of the Zoning Hearing Board at which they made their decision on the variance applications."  (Pls.' Resp. at 11.)  Plaintiffs then launch into a discussion about prior restraints and their disfavored status under the First Amendment.

Plaintiffs' procedural due process claims must be dismissed.  "The Third Circuit has

---

[1] Defendants did not directly address the constitutionality of the Borough's sign ordinances and it is not clear from Plaintiffs' Complaint the exact nature of their constitutional objections to the Borough's sign ordinances.  The Court trusts that Plaintiffs will either develop these arguments through discovery or drop these claims.

[2] Procedural and substantive due process claims under the Pennsylvania Constitution are evaluated using the same standards as under the federal constitution.  *Bartram ex rel. Bartram v. Pennsbury Sch. Dist.*, Civ. A. No. 98-6159, 1999 WL 391480, at *6-7 (E.D. Pa. May 24, 1999) (citing *R. v. Commonwealth Dep't of Pub. Welfare*, 636 A.2d 142, 152 (Pa. 1994)).

conclusively held Pennsylvania's statutory scheme adequately protects the procedural due process rights of a plaintiff challenging a municipality's zoning decisions." *Tri-County Concerned Citizens Ass'n v. Carr*, Civ. A. No. 98-4184, 2001 WL 1132227, at *5 (E.D. Pa. Sept. 18, 2001) (citing *Rogin v. Bensalem Twp.*, 616 F.2d 680, 694-95 (3d Cir. 1980)). "Pennsylvania provides adequate due process because it provides reasonable remedies to rectify a legal error by a local administrative body." *8131 Roosevelt Blvd. Corp. v. City of Phila.*, Civ. A. No. 02-1392, 2003 WL 57903, at *7 (E.D. Pa. Jan. 6, 2002) (citing *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988)).

The Complaint offers no basis for a procedural due process claim. The record before the Court shows that a public hearing was held – Plaintiffs included a copy of the transcript with their Complaint – and that the ZHB subsequently issued a written decision that outlined its reasons for denying the variances. Proper notice of the hearings was given, testimony was offered, and the public was provided an opportunity to speak. Accordingly, the ZHB complied with Pennsylvania law regarding zoning hearings. *See* 53 PA. CONS. STAT. ANN. §10908. Furthermore, Plaintiffs could have appealed the ZHB's decision to the Court of Common Pleas. *See* 53 PA. CONS. STAT. ANN. §11002-A ("All appeals from all land use decisions . . . shall be taken to the court of common pleas of the judicial district wherein the land is located and shall be filed within 30 days . . . "). Thus, Plaintiffs received all the process they were due. They cannot sustain this claim by simply alleging that they failed to obtain a variance.

### 3.   Substantive Due Process

Substantive due process protects against arbitrary government action, both at the executive and legislative levels. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Plaintiffs argue that Defendants have acted in an arbitrary fashion by denying them a variance.

As an initial matter, the parties disagree on the appropriate standard to be applied to this claim. Defendants want the court to apply the "shocks the conscience" test as outlined in *United Artists Theater Circuit v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003). Plaintiffs argue for a less stringent standard, contending both that the test is whether the ordinance "serves 'intermediate scrutiny' of advancing a significant or substantial government interest" yet also contending that because the adult use ordinance is a content-based restriction, strict scrutiny applies. (Pls.' Resp. at 15-16.)

The Third Circuit distinguishes between legislative and executive actions when faced with a substantive due process claim. The "shocks the conscience" test applies to executive actions. *County Concrete Corp.*, 442 F.3d at 169; *Blain v. Twp. of Radnor*, 167 Fed. Appx. 330, 333 (3d Cir. 2006) ("In land-use cases, only executive action that 'shocks the conscience' constitutes a substantive due process violation."). Only the most egregious official conduct can sustain a substantive due process claim. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). The Third Circuit has described the following as "conscience shocking:" actions involving corruption or self-dealing, hampering development to interfere with otherwise constitutionally protected activity, bias against an ethnic group, or a "virtual taking." *Blain*, 167 Fed. Appx. at 333 (citing *Eichenlaub*, 385 F.3d at 286).

Plaintiffs contend that a Supreme Court case, *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997), abrogates the "shocks the conscience" test. Therefore, they contend that the "shocks the conscience" standard plays no role in this Court's review of the ZHB decision. (Pls.' Resp. at 16.) This Court rejects Plaintiffs' argument regarding *International College of Surgeons*. That case did not address the appropriate standard to apply to a substantive due process

claim arising from a land-use decision. Despite Plaintiffs' protests to the contrary, the Third Circuit continues to remind courts – even post *International College of Surgeons* – that federal district courts are not zoning boards of appeals. *See Chainey v. Street*, 523 F.3d 200, 219-220 (3d Cir. 2008) (citing *United Artists Theater Circuit*, 316 F.3d at 402 (noting that in context of substantive due process, land-use and zoning are "matters of local concern" and federal court is not a "zoning board of appeals")).

Plaintiffs' Complaint contains no allegations that would rise to the level of "conscience shocking." Plaintiffs do not allege that the ZHB was corrupt or engaged in self-dealing. Plaintiffs' disagreement with the ZHB over its land-use decision simply does not represent a substantive due process violation – the Court will not read into a complaint a substantive due process claim based solely on the failure to obtain a variance.

Turning to the legislative action undertaken by the Borough of Morrisville, the issue is whether the government can point to a legitimate state interest rationally served by the ordinance. *See County Concrete Corp.*, 442 F.3d at 169; *see also Nichols v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000) ("[W]hen a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose."). Thus, a plaintiff must allege facts that would support a finding that the legislative body acted arbitrarily or irrationally. *See Cornell Cos.*, 512 F. Supp. 2d at 259-60.

Plaintiffs claim that the ordinances at issue are arbitrary and capricious both on their face and as applied. The Court declines to dismiss this claim given the early stage of these proceedings and its close relation to Plaintiffs' freedom of expression claims.

### 4. Equal Protection

Plaintiffs' equal protection claim is murky at best: they claim that prior restraints are presumptively unconstitutional and impinge on fundamental First Amendment rights. (Pls.' Resp. at 14.) Plaintiffs also contend that they have been subjected to controls not imposed on other similarly situated businesses or properties. (Compl. ¶ 69.)

Plaintiffs' equal protection claim is redundant given their First Amendment claims. *See Hill v. City of Scranton*, 411 F.3d 118, 126 (3d Cir. 2005) ("If a law passes muster under the First Amendment it is also likely to be upheld under the Equal Protection clause. Likewise, if a law violates First Amendment rights there is no need to resort to the Equal Protection clause to redress the constitutional violation."); *see also Little Mack Entm't II, Inc.*, Civ. A. No. 05-128, 2008 WL 2783252, at *14 (July 17, 2008) (in case involving challenge to zoning ordinances of adult businesses, equal protection claims "add[] nothing to the First Amendment analysis"). Their equal protection claim will fail if their First Amendment claim fails. If however, Plaintiffs succeed on their First Amendment claim, their rights will be protected without resorting to equal protection analysis. Accordingly, the Court will dismiss their equal protection claim.[3] *See Harris v. Twp. of O'Hara*, Civ. A. No. 06-169, 2006 WL 3231876, at *5 (E.D. Pa. Nov. 7, 2006) (noting that overlap between First Amendment and equal protection claims made equal protection claim unnecessary).

### 5. Contracts Clause

Plaintiffs also contend that Defendants' actions have destroyed their contractual relationship

---

[3] Courts analyze equal protection claims under the Pennsylvania Constitution using the same standard used to analyze federal equal protection claims. *See Phila. Fraternal Order of Corr. Officers v. Rendell*, App. A. No. 96-1781, 1997 WL 1161146, at *6 (3d Cir. Oct. 21, 1997) (citing *Magazine Publishers of Am. v. Commonwealth*, 654 A.2d 519, 525 (Pa. 1995). For the above reasons, Plaintiffs' state law equal protection claim will also be dismissed.

in violation of the United States and Pennsylvania Constitutions.  A contracts claim under the Pennsylvania Constitution is "generally to be applied in the same manner as its federal counterpart." *Transp. Workers Union of Am., Local 290 v. S.E. Pa. Transp. Auth.*, 145 F.3d 619, 625 (3d Cir. 1998) (citing *First Nat'l Bank of Pa. v. Flanagan*, 528 A.2d 134, 135 n.1 (Pa. 1987)).

The Contracts Clause of the United States Constitution states that, "[n]o state shall . . . pass any Law impairing the obligation of contracts."  U.S. CONST. art. I, § 10, cl. 1.  To succeed on a contracts clause claim, a plaintiff must show that a "change in state law has operated as a substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992); *see also Transp. Workers Union of Am., Local 290*, 145 F.3d at 621.  Courts must consider: (1) whether there is a contractual relationship; (2) whether a change in law has impaired that contractual relationship; and (3) whether the impairment is substantial. *Romein*, 503 U.S. at 186.

Plaintiffs' contracts clause claims fail as a matter of law.  As a threshold matter, the contracts clause applies only to legislative acts – enforcement of zoning regulations is an administrative, not a legislative act and is therefore not within the scope of the contracts clause. *Soppick v. Borough of W. Conshohocken*, Civ. A. No. 03-890, 2004 WL 739945, at *2 (E.D. Pa. Mar. 8, 2004).  Thus, to the extent Plaintiffs directed these claims to the ZHB, they are dismissed.

Claims directed at the Borough of Morrisville under the contracts clause also fail.  Plaintiffs cannot show a change in law that has impaired their contractual relationship.  The contract at issue here – the lease – was entered into in February of 2008, long after the ordinances in question were on the books.  Furthermore, it is difficult to see how these ordinances operated as a substantial impairment of a contractual relationship.  The lease contained provisions that released the parties from their obligations if the appropriate government approval was not obtained – indeed the lease

15

was contingent upon Stockham obtaining a variance that would permit 10 Enterprises to legally operate an adult-oriented establishment on the premises.  Without the variance, Plaintiffs have asserted a contracts clause claim without a contract.  For all of these reasons, Plaintiffs' contracts clause claims are dismissed.

6.     *Fourth and Fifth Amendments*

Plaintiffs' Complaint makes a fleeting reference to the Fourth Amendment and mentions the Fifth Amendment several times.  Plaintiffs take issue with the "Inspector" provision of the Adult Use Ordinance.  The "Inspector" is an employee of Morrisville Borough's department of inspections and permits vested with authority to inspect adult entertainment establishments and to "tak[e] required actions authorized by this chapter . . . and to request correction of unsatisfactory conditions found on a premises."  (Adult Entertainment Ordinance § 106-2.)  The Fourth Amendment, of course, protects people against unreasonable searches and seizures.  It does not protect against the fear or possibility of an unreasonable search or seizure, which is at most what Plaintiffs have alleged.  The Fourth Amendment claim is therefore dismissed.

Turning to the Fifth Amendment, Plaintiffs wisely "concur that the Fifth Amendment applies only to federal action." (Pls.' Resp. at 20.) Yet Plaintiffs still maintain that because the "Fourteenth Amendment makes the Fifth Amendment applicable to state actors . . . it is appropriate to refer to the underlying law as well as the implementing Amendment." (*Id*.)  The Court will avoid parsing through the truth of this statement or its relevance to Plaintiffs' legitimate claims.  It is enough to state that the Fifth Amendment applies to the actions of the federal government and that Plaintiffs raise no allegations directed at the federal government. *See Pub. Utils. Comm'n of DC v. Pollak*, 343 U.S. 451, 461 (1952).  Plaintiffs' Fifth Amendment claims are dismissed.

16

### 7.    Money damages under the Pennsylvania Constitution

"[T]here is no private cause of action for damages arising from violations of the Pennsylvania Constitution." *Bayer v. Monroe County Child & Youth Servs.*, Civ. A. No. 04-2505, 2007 WL 3034009, at *13 (M.D. Pa. Oct. 15, 2007) (citing *Jones v. City of Phila.*, 890 A.2d 1188, 1215-16 (Pa. Commw. Ct. 2006)); *see also Farrell v. County of Montgomery*, Civ. A. No. 05-3593, 2006 WL 166519, at *3 (E.D. Pa. Jan. 18, 2006).  Accordingly, the Court grants Defendants' request to deny any monetary relief arising out of violations of the Pennsylvania Constitution.

### C.    Motion to Strike

Defendants also seek to strike portions of the Complaint, pursuant to Federal Rule of Civil Procedure 12(f).  Rule 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Although generally disfavored, motions to strike are committed to the discretion of the court.  *River Rd. Dev. Corp. v. Carlson Corp. - Ne.*, Civ. A. No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).

Count Forty-One (that is not a typo) of the Complaint is styled "Petition For On The Record Review" and asks this Court to review and overturn the decision of the ZHB.  Plaintiff wants this Court to ignore the ZHB, grant a variance, and throw open the doors to the club.  What follows is twenty-six pages of purported factual statements, quotes from the record before the ZHB, and legal arguments.  Plaintiffs rely on *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997), for the proposition that this Court has supplemental jurisdiction to conduct an on the record review of the ZHB's decision and that this Court should conduct the same review of the record that a state court would conduct.  Plaintiffs then go even further and suggest that their pleading is appropriate as a "Petition for Writ of Certiorari."  (Pls.' Resp. at 21.)

17

The Supreme Court held in *International College of Surgeons* that a case containing both claims that local administrative action violates federal law and state law claims requesting on-the-record review of the administrative findings can be removed to federal district court.  In that case, the Chicago Landmarks Commission refused to issue necessary permits to allow the demolition of certain buildings in a landmark district so that a high-rise condominium tower could be constructed.  The property owners sued in state court, alleging federal constitutional violations and seeking administrative review of the denial of the permits.  The city removed the case to federal court and the district court exercised supplemental jurisdiction over the state law claims.  After the city won, the Seventh Circuit Court of Appeals reversed and remanded the case to state court.  The Court of Appeals determined that the district court lacked jurisdiction since a proceeding to review state administrative action under a deferential standard was not a civil action within a district court's original jurisdiction under the removal statute.  The Supreme Court granted certiorari "to address whether a case containing claims that local administrative action violates federal law, but also containing state law claims for on-the-record review of the administrative findings, is within the jurisdiction of federal district courts." *Id*. at 163.  The Supreme Court concluded that the cases were removable because the state court complaints raised a number of federal issues.  Once properly removed, the district court had jurisdiction over not only the federal claims but those state law claims that derived from a common nucleus of operative fact. *Id*. at 165.  The federal claims and state law claims were part of the same case and thus formed a single controversy within the decisional realm of the federal courts.  Accordingly, because the federal claims were within the original jurisdiction of the federal courts, the state law claims fell within the court's supplemental jurisdiction.

Thus, this Court has supplemental jurisdiction over Plaintiffs' state law claims.  But

*International College of Surgeons* goes no further.  The Supreme Court explicitly noted that simply because a federal district court may exercise jurisdiction over state law claims does not mean that it must exercise jurisdiction in all cases.  *Id*. at 172.

Regardless of the propriety of exercising supplemental jurisdiction to examine the ZHB's decision – an issue that the Court need not tackle now – the Supreme Court in *International College of Surgeons* did not alter the pleading rules for complaints filed in federal court.  The Plaintiffs' brief-within-a-complaint flies in the face of the requirement that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a). Count XLI also runs counter to the requirement that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  FED. R. CIV. P. 10(b).  As drafted, Defendants cannot properly answer Plaintiffs' Complaint and therefore this Court will strike Plaintiffs' "Petition For On The Record Review" but will allow Plaintiffs an opportunity to amend their Complaint to reasonably incorporate relevant allegations in accordance with the Federal Rules of Civil Procedure.  If necessary, the Court will address the merits of Plaintiffs' petition for an on the record review of the ZHB's decision at a later date.[4]

---

[4]Defendants also argue that Plaintiffs failed to file their appeal within the thirty-day time period allotted under Pennsylvania law.  Plaintiffs contend that their appeal is timely because they filed their Complaint in this Court within the appropriate time frame when afforded the extra three days provided by Rule 6 of the Federal Rules of Civil Procedure.  Plaintiffs suggest that they are entitled to the benefits of Rule 6 because their claim for on-the-record review is within this Court's supplemental jurisdiction and thus the federal rules must govern this procedural aspect of the case.  Of course, Plaintiffs assume that the timeliness issue is a procedural one.  Because the parties have not briefed this issue and certain relevant facts are not clear, the Court will not address the merits.  But to the extent Plaintiffs argue that *International College of Surgeons* gets their petition for on-the-record review into federal court and also requires this Court to apply federal law to their state law claims, they have stretched that case far beyond its holding.

**IV.     CONCLUSION**

Plaintiffs painted with a broad brush when they drafted their Complaint.  The Court has considerably narrowed the issues and for the reasons stated above, Defendants' motion is granted in part, and denied in part.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STOCKHAM INTERESTS, LLC, et al.,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **BOROUGH OF MORRISVILLE, et al.,** | : | **No. 08-3431** |
| **Defendants.** | : | |

<u>**ORDER**</u>

**AND NOW**, this **12th** day of **November**, **2008**, upon consideration of Defendants'

Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rules 12(b)(6) and 12(f), Plaintiffs'

response thereto, and for the foregoing reasons, it is hereby **ORDERED** that the motion

(Document No. 9) is **GRANTED in part** and **DENIED in part** as follows:

1.      Plaintiffs' free speech claims under both the United States and Pennsylvania

Constitutions, and Substantive Due Process claim against the Borough of

Morrisville may proceed.

2.      Plaintiffs' Fourth Amendment claim, Fifth Amendment claim, Equal Protection

claims, Procedural Due Process claims, Contract Clause claims, and Substantive

Due Process claim against the Morrisville Zoning Hearing Board are

**DISMISSED**.

3.      Plaintiffs' request for money damages for violations of the Pennsylvania

Constitution is **DENIED**.

4.      Defendants' request to strike portions of Plaintiffs' Complaint is **GRANTED**.

Plaintiffs' Count XLI – Petition for on the Record Review is stricken.  However,

Plaintiffs shall have until **Monday, December 1, 2008**,  to amend their Complaint

to comply with the Federal Rules of Civil Procedure.


**BY THE COURT:**

**Berle M. Schiller, J.**

2